# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE DAVID, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-9274 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| BAYVIEW LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's motion [12] to dismiss Plaintiff's complaint for failure to state a claim. For the reasons stated below, Defendant's motion [12] is granted. The Court also strikes Plaintiff's amended complaint [20] from the docket because it was filed without leave of Court and fails to cure the defects of the original complaint [1]. Plaintiff is given until May 31, 2016 to file an amended complaint consistent with this opinion.

**I.      Background[1]**

In 1987, Plaintiff obtained a mortgage to purchase a four-unit apartment building located at 6522 N. Richmond Street in Chicago (the "Property"). The lender was Taylor Bean & Whitaker. Plaintiff lives in the property with his elderly mother, his brothers, their spouses, and their thirteen minor children.

In May 2007, following months of illness, Plaintiff was admitted to the hospital and underwent multiple surgeries on his brain and back. Due to his illness, Plaintiff lost his family business and defaulted on his mortgage.

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-plead allegations set forth in Plaintiff's complaint. See *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013).

In 2008, Taylor, Bean & Whitaker filed a complaint in the Cook County Circuit Court to foreclose on Plaintiff's mortgage. See [1] at 11 (copy of George & Marlyn David's verified answer to Taylor, Bean & Whitaker's complaint to foreclose mortgage, Cook County Circuit Court No. 08 CH 26833).

After Plaintiff recovered from his illness, he sought to modify the mortgage through the federal Home Affordable Modification Program ("HAMP"). In March 2009, Plaintiff filed an application for modification with Taylor Bean & Whitaker. The application contained an "actual budget" and an "affordable proposed budget," which both listed Plaintiff's total monthly income as $3,362.50. [1] at 20-21. In 2010, Taylor Bean & Whitaker went out of business and Defendant took over the mortgage. Plaintiff submitted two applications for modification to Defendant in 2010 and 2011 but did not receive any response from Defendant.

On October 12, 2012, the Cook County Circuit Court entered a judgment of foreclosure against Plaintiff and ordered the Property sold.

On November 8, 2012, Plaintiff filed a new HAMP application with Defendant. This application showed a total household income of $6382.00 and was supported by pay stubs, tax returns, and government issued benefits letters. Plaintiff alleges that throughout this process, he "was told by [Defendant's] representatives not to worry, '[Defendant] has an in-house program that qualifies homeowners based on their income.'" [1] at 8. "Based on this, [Plaintiff] spent a large sum of his family's savings remodeling portion[s] of the property." *Id.*

On September 20, 2013, Plaintiff received a letter from Defendant informing him that he did not qualify for a loan modification because his "$2488.18 household income is outside the range of required income." [1] at 8. On October 3, 2013, Plaintiff requested that Defendant review the application using $6382.00 as the total household income. On October 17, 2013,

2

Defendant requested that Plaintiff fill out a new application with supporting documents. Defendant insisted that the application must be completed by the next day. This deadline was impossible for Plaintiff to meet because the application involved several families.

On October 25, 2013, Plaintiff filed an emergency motion in the Cook County Circuit Court seeking to stay the sale of the Property. Defendant voluntarily stopped the sale. The judge did not, as Plaintiff had expected, question Defendant about why it had rejected Plaintiff's HAMP applications.

Plaintiff submitted a new HAMP application and supporting documents to Defendant on November 23, 2013. On January 17, 2014, Plaintiff received an email from an employee of Defendant, Andre South, asking to verify his mother's address. South wrote to Plaintiff: "George the file looks good. We can get your income cleared if we resolve this one missing document[.]" [1] at 33. Plaintiff obtained a state identification card for his mother and verified her address with Defendant.

On February 7, 2014, Plaintiff received a letter from Defendant denying his HAMP application on the basis that his total gross income, which Defendant verified as $2,497.90, was not high enough to make Plaintiff eligible for HAMP. On November 6, 2014, Defendant approved a short sale of the Property. The Property was scheduled to be sold on October 23, 2015.

Plaintiff filed the instant lawsuit against Defendant on October 20, 2015, three days before his property was scheduled to be sold. According to the first page of his complaint, Plaintiff's claim is for "violation of plaintiff's civil rights as protected by the Constitution and laws of the United States under 42 U.S.C. §§1983, 1985, and 1986." [1] at 1. Plaintiff alleges that he "is not litigating the foreclosure" on the Property but instead is "litigating HAMP and

3

why a company such as Bayview who uses government money is able to violate the law and denies citizens' rights without being questioned." [1] at 10. Plaintiff alleges that Defendant "circumvented every HAMP application" that he submitted—an estimated eight applications in total—"in an attempt to prolong the process to accumulate immoral expenses to make it more difficult and intimidating to [Plaintiff], so [Defendant] can get rid of the property and make a quick sale for profit." [1] at 9.

Along with his complaint, Plaintiff also filed a motion for a temporary restraining order. Plaintiff requested "one final HAMP application supervised by this Honorable Court according to the HAMP program" before the Property was sold in a judicial sale. [4] at 4. Plaintiff did not notice the motion for a hearing as required by the Court's rules.

On October 23, 2015, the Court entered an order [7] denying Plaintiff's motion for a temporary restraining order [4]. The Court concluded that Plaintiff failed to establish a likelihood of success on the merits of any claim to stop the sale from going forward due to: (1) the Rooker-Feldman doctrine, which prohibits federal courts from reviewing or upsetting the final judgment of state courts; and (2) the Anti-Injunction Act, which greatly limits the circumstances in which federal courts can enjoin state court proceedings, including foreclosure sales taking place pursuant to final judgments in foreclosure actions. [7] at 1.

It is not clear from the record whether the October 23, 2015 sale of the Property went forward or has been postponed.

On November 18, 2015, Defendant filed a motion [12] to dismiss Plaintiff's claim. Defendant argues that the section 1983 claim must be dismissed because Defendant is not a state actor and Plaintiff has not alleged any facts suggesting that it is. In response, Plaintiff agrees that "his complaint failed to state a claim," but argues that it should not be dismissed because "[b]ased on *Wigod v. Wells Fargo Bank, N.A.*, [673 F.3d 547 (7th Cir. 2012)], Plaintiff has the

right to file a lawsuit against the Defendant for promissory estoppel, consumer fraud, and fraudulent misrepresentation under Illinois state law." [15] at 2, 6. In reply, Defendant argues that the complaint does not contain sufficient factual allegations to support claims for promissory estoppel, consumer fraud, or fraudulent misrepresentation, or to establish the Court's diversity jurisdiction over such claims.

On March 18, 2016, while Defendant's motion to dismiss was pending and without leave of Court, Plaintiff filed an amended complaint [20]. The amended complaint contains the same factual allegations as the original complaint but includes a new argument section. Plaintiff argues that he qualifies for a loan modification under HAMP and that Defendant "violated the Federal Economic Stabilization Act of 2008" by denying his applications. [20] at 7. Plaintiff asks the Court to "claim subject-matter jurisdiction over this case based on the Federal Economic Stabilization Act of 2008." *Id.* at 7-8. It is not clear, however, what remedy Plaintiff is seeking in his amended complaint. Plaintiff does not request damages or injunctive relief.

## II.  Legal Standard

Defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. To survive dismissal, the complaint must provide the defendant with "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). In reviewing a

motion to dismiss under Rule 12(b)(6), the Court takes as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Cincinnati Life Ins.*, 722 F.3d at 946. Finally, since Plaintiff is proceeding *pro se*, the Court is "obligated to give a liberal construction" to his complaint. *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014).

## III. Analysis

The Court concludes that Plaintiff's complaint must be dismissed because it does not state a claim over which this Court has jurisdiction. The federal district courts are "courts of limited jurisdiction." *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 845 (7th Cir. 2015). They have original "federal question" jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. They also have "diversity" jurisdiction over all civil actions in which two requirements are met: First, there must be "complete diversity between all named plaintiffs and all named defendants"—meaning that no named plaintiff is from the same state as any named defendant—"and no defendant [may be] a citizen of the forum State." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005); see also 28 U.S.C. § 1332(a). Second, the matter in controversy must "exceed[] the sum or value of $75,000, exclusive of interest and costs." *Id.* The Court discusses both types of jurisdiction below.

### A. Federal Question Jurisdiction

The Court does not have federal question jurisdiction over Plaintiff's action because Plaintiff has not sufficiently plead a violation of federal law. Plaintiff concedes that he does not state a claim under 42 U.S.C. § 1983. "To state a claim under this section, the plaintiff must establish the deprivation of a right secured by the Constitution or laws of the United States."

*Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009) (citing *Daniels v. Williams,* 474 U.S. 327, 330–31). "He also must show that the alleged deprivation was committed by a person acting under the color of state law." *Id.* "[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); see also *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The state's "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient" to hold a private party liable as a state actor. *Blum*, 457 U.S. at 1004. While Plaintiff alleges that TARP is a federal program from which Defendant benefits, Plaintiff's complaint does not contain any allegations suggesting that the federal government coerced or encouraged Defendant to engage in the actions complained of by Plaintiff. Therefore, Plaintiff has failed a state a claim for violation of Section 1983.

The first page of Plaintiff's complaint indicates that he is also bringing claims under 42 U.S.C. §§ 1985 and 1986. Section 1985 prohibits certain conspiracies to deprive persons of their civil rights and Section 1986 provides a private right of action for redress of violations of Section 1985. See generally 42 U.S.C. §§ 1985, 1986. The Court concludes that Plaintiff has failed to state claims for violation of Section 1985 or 1986 because the complaint does not allege that Defendant engaged in a conspiracy to deprive him of any civil rights.

In his amended complaint, which was filed without leave of Court, Plaintiff argues that his application complied with the requirements for a lender to consider a HAMP modification and that Defendant "violated the Federal Economic Stabilization Act of 2008" ("Act") by denying his applications. [20] at 7. Plaintiff asks the Court to "claim subject-matter jurisdiction

7

over this case based on the * * * Act." *Id.* at 7-8. The Court concludes that these allegations do not state a claim upon which relief can be granted because Plaintiff does not have a private right of action to enforce to the Act. The Act was passed in 2008 in part to "protect home values and preserve homeownership." *McGann v. PNC Bank, Nat. Ass'n*, 2013 WL 1337204, at *1 (N.D. Ill. Mar. 29, 2013). "Pursuant to the Act, on February 18, 2009, the Secretary of the Treasury and Director of the Federal Housing Finance Authority announced the Making Home Affordable Program ('MHAP')." *Id.* "Part of MHAP included the creation and implementation" of HAMP. *Id.* "HAMP and its enabling statute do not contain a federal right of action[.]" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012). See also *Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortgage Loan Trust, Series 2003-1*, 787 F. Supp. 2d 747, 752 (N.D. Ill. 2011) ("It is undisputed that * * * HAMP [does not] create[] a private right of action."). Therefore, the Court cannot claim jurisdiction over this case based on the Act.

B. **Diversity Jurisdiction**

Although Plaintiff has not alleged any viable federal claims, the Court may still exercise jurisdiction over Plaintiff's state law-based claims if the requirements of the diversity jurisdiction statute are met. See 28 U.S.C. § 1332. However, the Court concludes that Plaintiff has not alleged facts sufficient to allow the Court to determine that it has diversity jurisdiction.

First, Plaintiff's allegations regarding the citizenship of Defendant are insufficient. "For diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007). Therefore, in order to establish that the Court has diversity jurisdiction, a plaintiff is required to "identify the citizenship of each of [the LLC's] members as of the date the complaint * * * was filed, and, if those members have members, the citizenship of those members as well." *Id.* See also *DC*

*Liquidators, LLC v. Warehouse Equip. Specialists, LLC*, 66 F. Supp. 3d 1138, 1139 (N.D. Ill. 2014) ("the citizenship of an LLC is that of each of its members, and this must be traced all the way through any corporate, LLC, or other entity members"). Plaintiff's complaint does not identify the members of Defendant or where they are citizens and, therefore, is insufficient to establish that the Court has diversity jurisdiction.[2]

In addition, Plaintiff has not alleged that the amount in controversy exceeds $75,000, which is required to bring an action in federal court based on diversity jurisdiction. See 28 U.S.C. § 1332(b). In a case where the plaintiff seeks money damages, "[t]he amount in controversy is 'whatever is required to satisfy the plaintiff's demand, in full, on the date the suit begins.'" *Fulcrum Fin. Advisors, Ltd. v. BCI Aircraft Leasing, Inc.*, 354 F. Supp. 2d 817, 824 (N.D. Ill. 2005). The plaintiff must make "a good faith claim in excess of $75,000.00 in order to create federal jurisdiction." *Id.* In a case where the plaintiff seeks injunctive relief, "'the amount in controversy is measured by the value of the object of the litigation.'" *Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799 (7th Cir. 2003) (quoting *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 347 (1977)). In the Seventh Circuit, the value of the injunction "may be valued from either perspective—what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand." *Id.* at 799-80. In this case, the complaint does not clearly identify the remedy he seeks or the dollar value of that remedy.[3] The

---

[2] Plaintiff's allegations concerning his own citizenship are sufficient. "To determine an individual's citizenship for diversity purposes, courts look to the state of the individual's domicile when the complaint was filed. *Ner Tamid Congregation of N. Town v. Krivoruchko*, 620 F. Supp. 2d 924, 931 (N.D. Ill. 2009). "Domicile has two elements: (1) physical presence or residence in a state and (2) an intent to remain in the state." *Id.* Plaintiff alleges that he and his family have maintained a residence in Illinois since at least 1987 and that he seeks to stay in that residence going forward.

[3] While Plaintiff's form complaint indicates generally that Plaintiff seeks "[d]amages to compensate for all bodily harm, emotional harm, pain and suffering, loss of income, loss of enjoyment of life, property damage and any other injuries inflicted by defendant" and "[s]uch injunctive, declaratory, or other relief

amended complaint does not fix this problem. Therefore, the Court concludes that it does not have diversity jurisdiction over Plaintiff's lawsuit.

### C. State Law Claims

If Plaintiff can establish in an amended complaint that the Court has diversity jurisdiction, then the Court would have jurisdiction over Plaintiff's claims for violation of Illinois state law. Plaintiff asserts in his response to Defendant's motion to dismiss that, pursuant to *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012), he may have viable state law claims for promissory estoppel, consumer fraud, and fraudulent misrepresentation. The Court concludes that the complaint and the amended complaint do not state claims for promissory estoppel or fraudulent misrepresentation, but do contain sufficient allegations to state a claim for violation of the Illinois Consumer Fraud Act based on unfair practices.

#### 1. Promissory Estoppel

"The Illinois Supreme Court has delineated a four-part test to determine whether a claim premised on promissory estoppel grounds may succeed, which requires a plaintiff to prove that '(1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment.'" *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 676-77 (7th Cir. 2005) (quoting *Quake Constr., Inc. v. American Airlines, Inc.,* 565 N.E.2d 990, 1004 (Ill. 1990)). "Under Illinois law, a claim for promissory estoppel will only succeed where all the other elements of a contract exist, but consideration is lacking." *Id.* at 677. "In order to form a valid contract, there must be an offer and acceptance, consideration, and valid and certain contractual terms." *Lindy Lu LLC v. Illinois Cent. R. Co.*, 984 N.E.2d 1171, 1176 (Ill. App. 2013).

---

as may be appropriate," the complaint Plaintiff attached to the form does not mention damages and requests only that the Court "put an end to this travesty" so his family can remain in their neighborhood. See [1] at 5, 10.

The complaint, as currently pled, does not allege that Defendant made an unambiguous promise to Plaintiff that it would modify his mortgage. The closest Plaintiff comes is alleging that Defendant's representative told him "[w]e can get your income cleared if we resolve this one missing document," but this statement does not contain an unambiguous promise to modify the mortgage. [1] at 33. In addition, the complaint also does not allege that Plaintiff and Defendant ever agreed to certain contractual terms for a modification.

### 2. Consumer Fraud

To state a claim under the Illinois Consumer Fraud Act ("ICFA"), a plaintiff "must allege five elements: (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) the damages were proximately caused by the defendant's deception." *Blankenship v. Pushpin Holdings, LLC*, 2016 WL 212933, at *2 (N.D. Ill. Jan. 19, 2016). ICFA "provides redress not only for deceptive business practices, but also for business practices that, while not deceptive, are unfair." *Bartucci v. Wells Fargo Bank N.A.*, 2015 WL 6955482, at *4 (N.D. Ill. Nov. 10, 2015). "For conduct to be considered unfair, we consider three factors: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers." *Id*. at *5.

If the plaintiff alleges that the defendant engaged in *deceptive* conduct, the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure applies. See *Bartucci*, 2015 WL 6955482 at *5. The plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* If the plaintiff alleges *unfair*

conduct, the complaint "need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

If Plaintiff can establish that the Court has diversity jurisdiction, he may be able to state a claim against Defendant for violation of ICFA based on unfair conduct.[4] Plaintiff alleges that even though he met the qualifications to be eligible for a loan modification, Defendant "circumvented every HAMP application submitted by [Plaintiff] in an attempt to prolong the process to accumulate immoral expenses to make it more difficult and intimidating to [Plaintiff], so [Defendant] can get rid of the property and make a quick sale for profit." [1] at 9. Plaintiff plausibly alleges that Defendant engaged in unfair conduct on which Defendant intended him to rely in the course of trade or commerce by failing to consider some of Plaintiff's HAMP applications and not properly taking into consideration documentation showing that Plaintiff's income qualified him for a modification. Courts have allowed complaints for violation of ICFA to go forward based on similar allegations of unfair conduct. See *Acevedo v. CitiMortgage, Inc.*, 2013 WL 1283807, at *5 (N.D. Ill. Mar. 26, 2013) ("Plaintiffs' claim that defendant ran afoul of HAMP's requirement to adequately consider their application for a mortgage modification plausibly alleges that defendant violated the Illinois Consumer Fraud Act."); *Boyd v. U.S. Bank, N.A. ex rel. Sasco Aames Mortg. Loan Trust Series 2003–1,* 787 F. Supp. 2d 747, 751 (N.D. Ill. 2011) (loan servicer's alleged failure to consider the plaintiff's eligibility for a HAMP modification was a sufficient predicate for an ICFA claim for unfair conduct).

Plaintiff has not alleged with particularity circumstances showing that Defendant engaged in *deceptive* conduct. He does not allege that Defendant told him that his income qualified him

---

[4] Plaintiff could file a lawsuit in Illinois state court alleging an ICFA claim, regardless of whether this Court has diversity jurisdiction.

for a loan or that Defendant promised that he would receive the modification that he requested. Cf. *Bartucci*, 2015 WL 6955482 at *5 (denying bank's motion to dismiss plaintiff's ICFA claim where plaintiff alleged that the bank engaged in deceptive conduct by assuring him that he would qualify for a HAMP loan modification, "provid[ing] him differing information as to the status of his loan modification, g[iving] him explanations that led to dead-ends and excuses as to why his loan modification was not being processed or granted, and creat[ing] 'nonsensical tasks' for [him] to complete in order to be eligible for a loan modification"). Assuming he can establish diversity jurisdiction, Plaintiff can add allegations to his amended complaint to show that Defendant engaged in deceptive conduct, or he can proceed on an ICFA claim based solely on the theory that Defendant engaged in unfair conduct.

Finally, Plaintiff plausibly alleges that he suffered damages as a result of Defendant's unfair conduct. Plaintiff alleges that he spent "a large sum of his family's savings remodeling portion[s] of the property" based on Defendant's assurances that it had "an in-house program that qualifies homeowners based on their income," and that after making these expenditures, Defendant failed or refused to negotiate a plan for Defendant to stay in his home. [1] at 8. Cf. *Bartucci*, 2015 WL 6955482 at *5 ("courts have held that the inability to fairly negotiate a plan to stay in the home constitutes economic damages under the ICFA"); *Acevedo*, 2013 WL 12838078 at *5 ("Plaintiffs have also plausibly alleged they were damaged by claiming that they used their limited time and money attempting to obtain a mortgage modification from defendant rather than pursuing avenues that might have saved their home."). Nonetheless, if Plaintiff decides to file an amended complaint, it would be helpful if he provided more details about his damages—including any expenditures he made to make the approval of his application more

likely, any interest or fees he was required to pay, and any opportunities to save his home that he gave up while trying to work with Defendant on a HAMP modification.

### 3. Fraudulent Misrepresentation

Under Illinois law, "[t]he elements of a claim for fraudulent misrepresentation, also referred to as common law fraud, are: (1) a false statement or omission of material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance." Claims for fraudulent misrepresentation are subject to the heightened pleading standards set forth in Rule 9(b) of the Federal Rules of Civil Procedure. See *Petrakopoulou v. DHR Int'l, Inc.*, 660 F. Supp. 2d 935, 937 (N.D. Ill. 2009).

In this case, Plaintiff's claim for fraudulent misrepresentation fails at the onset because Plaintiff does state with particularity any false statements or omission of material fact made by Defendant. Plaintiff may attempt to cure this defect in an amended complaint.

## IV. Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion to dismiss the complaint. The Court also strikes the amended complaint from the docket. The Court cannot exercise federal question jurisdiction over Plaintiff's claims because Plaintiff does not state a viable claim for violation of the United States Constitution or federal law. The Court cannot exercise diversity jurisdiction over Plaintiff's claims because Plaintiff has not alleged facts sufficient to demonstrate that there is complete diversity between the parties and that the amount in controversy exceeds $75,000.

Plaintiff is given until May 31, 2016 to file an amended complaint. The amended complaint should include: (1) a section that explains why the Court has diversity jurisdiction

(assuming that it does); (2) a section identifying the legal claim or claims Plaintiff is bringing (such as violation of the Illinois Consumer Fraud Act); and (3) a section identifying the relief that Plaintiff wants this Court to provide, such as money damages in a particular amount. Plaintiff should also clarify how he was damaged economically as a result of Defendant's actions. The complaint as currently pled states a claim for violation of the ICFA based on unfair practices, but this Court will not be able to exercise jurisdiction over that claim absent a viable claim that falls within the Court's federal question jurisdiction and/or diversity jurisdiction. If Plaintiff wishes to assert additional claims in his amended complaint, he should review this opinion carefully and evaluate whether the facts support such claims.

Dated: April 29, 2016

                                              Robert M. Dow, Jr.
                                              United States District Judge