IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE DAVID, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-9274 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| BAYVIEW LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's motion [25] to dismiss Plaintiff's Second Amended Complaint [24] for lack of jurisdiction and for failure to state a claim. For the reasons stated below, Defendant's motion [25] is granted. Plaintiff's Second Amended Complaint fails to establish that the Court has jurisdiction over this suit. Plaintiff shall be given until April 7, 2017 to file a Third Amended Complaint. To survive dismissal, the Third Amended Complaint must either: 1) allege a viable federal claim under the Real Estate Settlement Procedures Act ("RESPA"), which would give the Court federal question jurisdiction over Plaintiff's lawsuit and allow the Court to exercise supplemental jurisdiction over Plaintiff's claim under the Illinois Consumer Fraud Act ("ICFA"); or 2) demonstrate that the amount in controversy in this suit is at least $75,000 and that there is complete diversity among the parties. Defendant shall have until March 24, 2017 to file a statement with the Court identifying all the citizenship information necessary to determine whether complete diversity exists, as explained below.

## I. Background[1]

In his Second Amended Complaint, Plaintiff alleges that Defendant violated the Fifth Amendment to the United States Constitution and the ICFA by depriving him of his home without due process. Plaintiff alleges that he is a citizen of Illinois, that Defendant is "a company incorporated in the state of Delaware," [24] at 1, that the amount in controversy exceeds $75,000, and therefore that the Court has diversity jurisdiction over his claims.

In 1987, Plaintiff's family purchased a four-unit apartment building located at 6522 N. Richmond Street in Chicago (the "Property"). Plaintiff lives (or lived) in the Property with his elderly mother, his brothers, their spouses, and their thirteen minor children. There was a mortgage on the Property, held by lender Taylor Bean & Whitaker.

In May 2007, following months of illness, Plaintiff was admitted to the hospital and underwent multiple surgeries on his brain and back. Due to his illness, Plaintiff lost his family business and defaulted on his mortgage.

Plaintiff sought to modify the mortgage through the federal Home Affordable Modification Program ("HAMP"). In March 2009, Plaintiff filed an application for modification with Taylor Bean & Whitaker. The application contained an "actual budget" and an "affordable proposed budget." [24] at 5. In 2010, Taylor Bean & Whitaker went out of business and Defendant took over the mortgage. Plaintiff submitted two applications for modification to Defendant in 2010 and 2011 but did not receive any response from Defendant.

On October 12, 2012, the Cook County Circuit Court entered a judgment of foreclosure against Plaintiff and ordered the Property sold.

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-plead allegations set forth in Plaintiff's Second Amended Complaint. See *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013).

On November 8, 2012, Plaintiff filed another HAMP application for modification with Defendant. This application showed a total household income of $6382.00 and was supported by pay stubs, tax returns, and government issued benefits letters. Plaintiff alleges that throughout this process, he "was told by [Defendant's] representatives not to worry, '[Defendant] has an in-house program that qualifies homeowners based on their income.'" [24] at 6. Plaintiff "relied on [this] information" and "spent a large sum of his family's savings remodeling portion[s] of the property." *Id.*

On September 20, 2013, Plaintiff received a letter from Defendant informing him that he did not qualify for a loan modification because his "$2488.18 household income is outside the range of required income." *Id*. Plaintiff complained to the Illinois and Florida Attorneys General. On October 17, 2013, Defendant requested that Plaintiff fill out a new application with supporting documents. Defendant insisted that the application must be completed by the next day. This deadline was impossible for Plaintiff to meet because the application involved several families. *Id*. at 6-7. Plaintiff submitted a new HAMP application and supporting documents to Defendant on October, 2013, showing a verified monthly income of $6766.00. *Id*.

On October 25, 2013, Plaintiff filed an emergency motion in the Cook County Circuit Court seeking to stay the sale of the Property. Defendant voluntarily stopped the sale. The judge did not, as Plaintiff had expected, question Defendant about why it had rejected Plaintiff's HAMP applications. *Id*. at 7.

On January 17, 2014, Plaintiff received an email from an employee of Defendant, Andre South, asking to verify his mother's address. South wrote to Plaintiff: "George the file looks good. We can get your income cleared if we resolve this one missing document[.]" [24] at 7.

3

Plaintiff obtained a state identification card for his mother and verified her address with Defendant. *Id*. at 7-8.

On February 7, 2014, Plaintiff received a letter from Defendant denying his HAMP application on the basis that his total gross income, which Defendant verified as $2,497.90, was not high enough to make Plaintiff eligible for HAMP. *Id*. at 8. On February 10, 2016, the Cook County Circuit Court approved the sale of the Property and the Property was sold. See [24] at 8. Plaintiff is pursuing an appeal of the order approving sale in the Illinois Appellate Court. *See id*.; see also [25-1]. On April 19, 2016, Plaintiff and his family were evicted from the Property. [24] at 8.

Plaintiff filed the instant lawsuit against Defendant on October 20, 2015. Plaintiff's original Complaint asserted claims for violations of 42 U.S.C. §§ 1983, 1985, and 1986. Defendant moved to dismiss the Complaint. See [12]. While the motion to dismiss was pending, Plaintiff filed an Amended Complaint [20]. On April 29, 2016, the Court dismissed Plaintiff's Complaint for lack of subject matter jurisdiction and struck Plaintiff's First Amended Complaint. See [23]. On May 31, 2016, Plaintiff filed a Second Amended Complaint, [24], which Defendant now moves to dismiss.

## II. Legal Standard

Defendant seeks dismissal of Plaintiff's Second Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). "For purposes of a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor." *Mutter v. Madigan*, 17 F. Supp. 3d 752, 756 (N.D. Ill. 2014). A Rule 12(b)(1) motion challenges federal subject matter jurisdiction. In ruling on the motion, the district court may look beyond the jurisdictional allegations alleged

in the complaint and take into consideration whatever evidence has been submitted on the issue to determine if subject matter jurisdiction exists. *County of Cook v. HSBC N. Am. Holdings Inc.*, 136 F. Supp. 3d 952, 958 (N.D. Ill. 2015). The burden of proof is on the party asserting that jurisdiction exists. *Id.*

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the Second Amended Complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

## III. Analysis

Upon reviewing Plaintiff's Second Amended Complaint, the parties' briefs, and its prior order in this suit, see [23], [24], [25], [28] and [29], the Court concludes that Defendant's motion to dismiss must be granted because Plaintiff fails to establish that the Court has jurisdiction over the lawsuit. As the Court explained in its April 29, 2016 order, see [23] at 6-17, Plaintiff has the burden to establish that the Court has either federal question jurisdiction or diversity jurisdiction over his lawsuit. Plaintiff's Second Amended Complaint fails to overcome the pleading deficiencies that the Court identified in its earlier order.

As to federal question jurisdiction, Plaintiff once again has not alleged a viable federal claim. Plaintiff asserts that Defendant violated his rights under the Fifth Amendment to the United States Constitution. However, private actors like Defendant do not have a constitutional obligation to provide due process. That is because the purpose of the due process clause is "to

protect the people from the State, not to ensure that the State protect[s] them from each other." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989); see also *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011) ("The Due Process Clause of the Fourteenth Amendment generally does not impose upon the state a duty to protect individuals from harm by private actors." (internal citation and quotation marks omitted)).

Plaintiff argues in his response to Defendant's motion to dismiss that he should be allowed to amend his complaint again to add a claim for violation of RESPA. While the Court will allow Plaintiff to do so, this does not save Plaintiff's Second Amended Complaint from dismissal for want of federal question jurisdiction.

Turning to diversity jurisdiction, Plaintiff's Second Amended Complaint does not remedy the pleading deficiencies that the Court outlined in its last opinion. See [23] at 8-10. As the Court explained, it has "diversity" jurisdiction over all civil actions in which two requirements are met: First, there must be "complete diversity between all named plaintiffs and all named defendants"—meaning that no named plaintiff is from the same state as any named defendant—"and no defendant [may be] a citizen of the forum State." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005); see also 28 U.S.C. § 1332(a). Second, the matter in controversy must "exceed[] the sum or value of $75,000, exclusive of interest and costs." *Id*.

In his Second Amended Complaint, Plaintiff asserts generally that his ICFA claim is worth well in excess of $75,000, for the "time, suffering, penalty and the loss of Plaintiff's [Property] of 28 years." [24] at 2. However, Plaintiff still does not specify the type or amount of relief that he is seeking in this lawsuit. The Court must have this information to evaluate whether Plaintiff's claim is worth at least $75,000. Specifically, if he prevails in this lawsuit, does Plaintiff want the Court to award him 1) monetary damages; 2) punitive damages; 3)

injunctive relief; 4) attorneys' fees; or 5) anything else? To the extent that Plaintiff alleges that he has suffered monetary damages, he should at least estimate the dollar amount in which he was damaged and explain how Defendant's alleged actions caused these damages. For example, how much money did Plaintiff spend fixing the Property, in reliance on Defendant's representations that it was considering his application for a HAMP modification?

Plaintiff's Second Amended Complaint also fails to establish that there is complete diversity of citizenship between the parties. Defendant is an LLC. As the Court explained in its prior decision, "[f]or diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007). Therefore, in order to establish that the Court has diversity jurisdiction, a plaintiff is required to "identify the citizenship of each of [the LLC's] members as of the date the complaint * * * was filed, and, if those members have members, the citizenship of those members as well." *Id.* See also *DC Liquidators, LLC v. Warehouse Equip. Specialists, LLC*, 66 F. Supp. 3d 1138, 1139 (N.D. Ill. 2014) ("the citizenship of an LLC is that of each of its members, and this must be traced all the way through any corporate, LLC, or other entity members"). The Second Amended Complaint alleges that Defendant is incorporated in Delaware, but does not identify the citizenship of Defendant's members.

The Court recognizes that it may be difficult for Plaintiff, who is acting pro se, to identify Defendant's members and their citizenship. Therefore the Court orders Defendant to submit a statement identifying the citizenship of each of the members of its LLC. If Defendant's members are themselves LLCs, then Defendant must identify the citizenship of those member LLCs, as well.

Plaintiff will be allowed to file a Third Amended Complaint if he is able to do so consistent with this opinion. If Plaintiff's Third Amended Complaint establishes that Court has jurisdiction, then the Court will issue another order addressing Defendant's arguments concerning: 1) the applicability of the *Colorado River* abstention doctrine, and, if necessary, 2) the sufficiency of Plaintiff's ICFA claim. The Court's preliminary assessment of these arguments is that *Colorado River* abstention likely is appropriate because Plaintiff has raised in the state appellate court the same ICFA violation that he alleges here. See generally *Deb v. SIRVA, Inc.*, 832 F.3d 800, 814 (7th Cir. 2016) (explaining that the *Colorado River* abstention doctrine "allows courts to conserve judicial resources by abstaining from accepting jurisdiction when there is a parallel proceeding elsewhere"). But the Court need not issue a definitive ruling on *Colorado River* at least until Plaintiff's operative complaint properly alleges a claim over which the Court has jurisdiction.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendant's motion to dismiss Plaintiff's Second Amended Complaint. Plaintiff shall have until April 7, 2017 to file a Third Amended Complaint if he can do so consistent with this opinion. To survive dismissal, the Third Amended Complaint must either: 1) allege a viable claim under the Real Estate Settlement Procedures Act ("RESPA"), which would give the Court federal question jurisdiction over Plaintiff's lawsuit and allow the Court to exercise supplemental jurisdiction over Plaintiff's claim under the Illinois Consumer Fraud Act ("ICFA"); or 2) demonstrate that the amount in controversy in Plaintiff's ICFA claim is at least $75,000 and that there is complete diversity among the parties. Defendant shall have until March 24, 2017 to file a statement with the Court identifying all the citizenship information necessary to determine whether complete diversity exists.

Dated: March 3, 2017

_____
Robert M. Dow, Jr.
United States District Judge